154 So. 448

**JUNG HOTEL, Inc., v. INSURANCE COMMISSION OF LOUISIANA.**

No. 32237.

March 26, 1934.

Rehearing Denied April 23, 1934.

Alfred B. Koorie, of New Orleans, for appellant.

Gaston L. Porterie, Atty. Gen., and James O'Connor, Asst. Atty. Gen., for appellee Insurance Commission.

Lemle, Moreno & Lemle, of New Orleans, for appellees Ætna Ins. Co. and others.

LAND, Justice.

Jung Hotel, Inc., domiciled in the city of New Orleans, is a Louisiana corporation, and carries fire insurance on its building and contents, and pays the premiums therefor.

The insurance commission of Louisiana is a board organized under Act No. 302 of 1926 of the Legislature of this state.

In November, 1926, the commission adopted a form of report comprising 26 classifications of the property to be insured.

Plaintiff alleges that the rates now charged for fire insurance on its hotel property are excessive, discriminatory, and unjust and have yielded the fire insurance companies doing business in the state excessive profit.

Plaintiff further alleges that, at the time of the passage of Act No. 302 of 1926, and for more than twenty-five years previous, practically all the companies writing fire insurance in this state had furnished to the National Board of Fire Underwriters in New York their premium and loss experience separately under 155 headings, that these figures

were tabulated by that board to serve the companies as a guide in enabling them to ascertain the percentages of losses and premiums under these respective classes, so that they might know what rates should be charged under each class, but that, instead of requiring the companies to file their premium and loss experience by this separate and customary classification, the insurance commission, at the instance of the companies, adopted the new system of only 26 classifications in November, 1926.

Plaintiff avers that this new system groups under a single heading such different classes as hotels, theaters, film exchanges, filling stations, laundries, slaughterhouses, cleaning houses, cleaning shops, newspapers, coal and wood yards, and floating property of every description, that each of these classes has always been rated heretofore separately, and that the sole purpose or effect of this new system is to confuse and mislead the insurance commissioners so as to make it impossible for them to analyze the underwriting results and ascertain whether or not the rates charged under the respective classes are fair.

Averring that the National Board of Fire Underwriters, on January 1, 1928, had destroyed the compiled statistics using 155 classifications, but that the individual fire insurance companies had not destroyed their own statistics, plaintiff made a demand upon the insurance commission that it issue an order requiring the filing of this information, so that after an examination of these classifications the unjust and illegal discrimination and excessive charges could be shown and proved, and that these charges be refer-

red to the rating and fire prevention bureau for proper adjustment in accordance with the provisions of Act No. 302 of 1926.

Plaintiff finally avers that the insurance commission, in a written finding or decree, refused to order the filing of the schedules or to adopt or use same, stating that "the request that this Commission adopt and use the classification of 155 classes is refused," and assigning as a reason therefor that the commission had adopted a schedule of 26 classifications, and that the compilation of these classifications did not justify a reduction or change in rates.

The Ætna Insurance Company and a large number of other fire insurance companies doing business in this state filed a joint exception of no right or cause of action to plaintiff's petition. This exception was sustained in the lower court, and plaintiff has appealed.

1. In its final analysis, the demand of plaintiff, the insured, is that the insurance commission repudiate its own classifications and adopt those of plaintiff, whose prayer in this case is virtually that this court order the commission to do so. Plaintiff prays that "this Honorable Court review the finding, order and decree of said Commission above set forth, that the defendant herein, the Insurance Commission of Louisiana, be cited to appear and answer this petition, and that in due course there be judgment herein ordering, directing and commanding the Insurance Commission of Louisiana to require and direct each fire insurance stock company doing business in Louisiana and all other fire insurance companies coming under the provisions of the above act to file with

said Commission their premium and loss experience separately under the customary one hundred fifty-five (155) classifications, and also an additional classification covering modern fire resistive hotels and contents for the five year period from January 1st, 1926, to December 31st, 1930, as prayed for herein."

Plaintiff's contention in this case is based upon the provisions of section 10 of Act No. 302 of 1926, which reads as follows: "The Insurance Commission shall require each stock fire insurance company licensed to do business in this State and all other insurers who may come under the provisions of this Act, to file with the said Commission a report showing separately by customary classifications the total Fire, Windstorm, Hail and Automobile Fire and Theft premiums received from insurance covering on property located in this State less returned premiums and premiums paid for reinsurance in companies licensed to do business in this State, the net losses and the expenses incurred which latter shall be reached by applying the percentage of the Company's general expense to the premium income from the State. Said report shall be filed not later than December 31st, 1926, and shall include the premiums, losses and expenses for the five year period ending December 31st, 1925.

"A similar report shall be filed in each year thereafter on or before April 1st, and shall include the net premiums, losses and expenses incurred for the year ending December 31st of the year next preceding.

"The Insurance Commission shall compile the information contained in the reports filed by all the stock fire insurance companies licensed to do business in the State. If it appears to the Insurance Commission from the said compilation that the rates charged for fire insurance in the State are excessive and unreasonable, in that the results of the business of all the stock fire insurance companies transacting business in the State during the period of five consecutive years next preceding the year in which the investigation is made shows an aggregate underwriting profit in excess of a reasonable amount then the said Insurance Commission shall have the power to order the Louisiana Rating and Fire Prevention Bureau to fix and said Commission shall promulgate such rates as will not yield to the stock fire insurance companies an under-writing profit in excess of approximately five per cent on business transacted in this State.

"In determining such profit consideration shall be given to the conflagration hazard, both within and without the State and such reasonable allowance made therefor as in the judgment of the Insurance Commission may be customary and proper. Such changes in the rates ordered by the Insurance Commission shall not be retroactive but shall be operative on policies written after the issuance of such order and shall be applied to such class or classes of risks as have proved most profitable to be designated in writing by said bureau with the approval of said Commission."

We fail to find that the provisions of this section have vested in plaintiff any right to interfere with the administrative power of the insurance commission of Louisiana, so as to compel it to exact of insurance compa-

nies one form of reports instead of another form of reports.

Nor does this section require that such reports shall contain 155 classifications as the customary number.

Section 10 of the act does not define "customary classifications." As to what were usual or customary classifications, the Legislature empowered the insurance commission to decide. The first insurance commission appointed under the act adopted 26 classifications as the customary classifications existing at the time, and these classifications have not been changed since the date of their adoption, November, 1926. It would have been unwise had the Legislature hampered the commissioners by compelling them to adopt classifications then customary, but which might become obsolete by the experience of future years. Had the Legislature done so, the scientific methods of rate making generally employed in the field of insurance would have been denied to the insurance commission of this state.

If the business of insurance were wholly static, an arbitrary limitation of classifications would be of no moment; but, like any other business, it is subject to the changes of progression or decline.

2. Plaintiff, without doubt, is entitled to a proper rate. Presumptively, such a rate is in existence. However, the petition in this case does not ask the court to remedy the wrong resulting from an unreasonable or excessive rate. But the court is asked to compel the insurance commission to change its methods of ascertaining whether or not the rates approved by the insurance commis-

sion are reasonable rates. Should we grant the prayer of plaintiff's petition, we should be compelled to order the insurance commission to adopt 155 classifications, with an additional clause covering modern fire resistive hotels and contents. The adoption of these classifications would affect not merely the right of petitioner, but the rights of the whole public, which is not complaining.

Without doubt, millions of dollars have been paid in premiums in accordance with the rates made by the use of the 26 classifications adopted by the insurance commission. These rates have gone without attack for a period of six years, and it is not to be presumed, at this late day, that the action of the commission has been unreasonable or arbitrary.

3. The data upon which these 26 classifications are made are in the possession of the insurance commission and are subject to the inspection of plaintiff.

If plaintiff is paying an excessive rate on its hotel, it can make a direct complaint to the insurance commission that the rate is excessive, and petitioner can produce such facts as will show, if that be possible, that the rate is excessive. The question whether the rate is a proper or an improper one depends upon the nature of the risk and other considerations which reside within the judgment of the insurance commission.

The Legislature has prescribed no condition and has legislated no formula by which the rates on fire resistive hotels shall be determined as reasonable or unreasonable.

4. Plaintiff alleges that, under the new system of classification adopted by the in-

surance commission, there is a consolidation of wholesale with retail stocks and that there is no distinction between stocks of groceries, dry goods, hardware, boots, and many other things, all of which are consolidated under one item or heading.

Plaintiff fails to understand that, if a man keeps a retail store and another man keeps a wholesale store, the fire hazard is largely the same. In each of these stores, the moral risk would be the same, whether the business would be a wholesale or a retail business. There would be danger of the building being burnt down from smoking by employees; from improperly installed electrical appliances; from fire on the roof out of nearby smokestacks; from communication of fire from adjoining buildings; and the advantage of arson would be equal.

Peculiar risks incident to particular businesses form but a small percentage of the hazard, while risks common to all business form the larger proportion of the hazard.

5. Plaintiff alleges that the sole purpose of the selection of these 26 classifications is to "confuse and mislead the Insurance Commissioners so as to make it impossible for them to analyze the underwriting results and ascertain whether the rates charged under the respective classes are fair or not."

Section 1 of Act No. 302 of 1926 provides: "That there is hereby created a Board to be known as the Insurance Commission to be composed of three persons resident citizens and qualified voters of this State who shall be skilled in the business of insurance rating, fire hazard, fire protection, fire insurance, engineering and inspection. * * * "

We must assume that the members of the insurance commission are duly qualified persons under the act, and could not be so easily duped.

6. In paragraph 10 of the petition, plaintiff alleges that, if the national board of fire underwriters did on January 1, 1928, destroy the statistics under 155 classifications, as a matter of fact the individual fire companies did not destroy their own statistics using 155 classifications, and have continued to use said system, because it is essential to the companies to establish and prove what rates are proper for different insurance companies.

If the insurance commission required the companies to keep only statistics for 26 classifications and the companies complied with that order, the insurance commission cannot come in and ask the companies to furnish statistics under 155 classifications which might have been kept for the private purpose of the companies.

It is well settled that the mere fact that a citizen was engaged in a business impressed with a public interest did not compel that citizen to give up his constitutional right of privacy. It follows, necessarily, that plaintiff cannot invoke the power of a court to investigate the private papers of insurance companies which were not kept in fulfillment of a public duty. Interstate Commerce Com. v. Baird, 194 U. S. 25, 24 S. Ct. 563, 48 L. Ed. 860; Harriman v. Interstate Commerce Com., 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253; Sinclair v. United States, 279 U. S. 263, 49 S. Ct. 268, 73 L.

Ed. 692; Barry et al. v. United States, 279 U. S. 597, 49 S. Ct. 452, 73 L. Ed. 867.

7. There can be no doubt of the right of a citizen to make complaint to the insurance commission that his fire insurance rates are discriminatory, but the fact that he has the right to make such a complaint and to request a hearing on his complaint does not create in him the power to turn the insurance commission into an inquisitorial body, nor to compel it to go on fishing expeditions into the private affairs of fire insurance companies.

Judgment affirmed.

ST. PAUL, J., absent.